IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 16-cv-00824-CBS

BETHANY ANNE MILAM,

                    Plaintiff,

v.

CAROLYN W. COLVIN, Acting Commissioner of Social Security,[1]

                    Defendant.

---

## MEMORANDUM OPINION AND ORDER

---

Magistrate Judge Craig B. Shaffer

        This action comes before the court pursuant to Titles II and XVI of the Social Security

Act ("Act"), 42 U.S.C. §§ 405(g) and 1383(c) for review of the Commissioner of Social Security

(the "Commissioner" or "Defendant")'s final decision denying Bethany Anne Milam's[2]

("Plaintiff") application for Disability Insurance Benefits ("DIB") and Supplemental Security

Income ("SSI"). Plaintiff filed the Complaint on April 12, 2016, and the case was assigned to

District Judge Robert E. Blackburn. Doc. 1. On June 21, 2016, the parties consented to

magistrate jurisdiction pursuant to 28 U.S.C. § 626. Doc. 14. On August 29, 2016, the case was

reassigned to this Magistrate Judge. Doc. 22. The court has carefully considered the Complaint,

Plaintiff's Opening Brief (filed July 21, 2016) (Doc. 16), Defendant's Response Brief (filed

August 11, 2016) (Doc. 17), Plaintiff's Reply (filed August 26, 2016) (Doc. No. 20), the entire

---

[1]  Plaintiff sued Carolyn W. Colvin in her capacity as then-acting Commissioner of Social
Security. The court takes judicial notice that the current acting Commissioner is Nancy A.
Berryhill. "The officer's successor is automatically substituted as a party."  Fed. R. Civ. P. 25(d).
[2] The complaint appears to misspell Plaintiff's last name as Miliam. The court instead uses the
spelling reflected in the administrative record and Plaintiff's briefs.

1

case file, the Social Security administrative record ("AR"), and the applicable law. Oral argument would not assist the court. For the following reasons, the court affirms the Commissioner's decision.

## BACKGROUND

In May 2012, Plaintiff filed an application under Title II of the Social Security Act for DIB. Plaintiff claimed that her ability to work was severely limited by several physical conditions: "bul[]ged disk and thinning disk in spine, neck, ibs, impingement syndrome causing bursitis in shoulder, acid reflux disease and heartburn." AR at 442. In January 2013, the application was denied administratively. Plaintiff requested a hearing before an administrative law judge ("ALJ"). Shortly thereafter, Plaintiff also applied for SSI. Her case was assigned to ALJ Nicholas J. Lo Burgio, who held evidentiary hearings on March 18, 2014 and August 12, 2014 in Denver, Colorado. Plaintiff was represented by counsel at the hearings. The ALJ heard the testimony of Plaintiff and a vocational expert, Ashley Bryars; at the second hearing, the ALJ also heard testimony from Dr. Robert Pelc, a forensic psychologist.

On August 25, 2014, the ALJ issued his decision denying benefits. AR at 142–158. The ALJ's opinion followed the five-step process outlined in the Social Security regulations.[3] At step one, the ALJ found that Plaintiff had not engaged in substantial gainful employment since her alleged onset date of May 15, 2011; although Plaintiff had worked for a few months as a tax preparer in early 2012, her earnings did not rise to the level of substantial gainful employment. *Id.* at 145.

At step two, the ALJ found that several of Plaintiff's conditions constituted severe impairments:

---

[3] The five-step process for DIB and SSI applications is defined in regulations of the Commissioner. The court discusses the five steps in more detail below.

degenerative disc disease of the lumbar spine, with anterolisthesis at L5-S1, congenital spondylolisthesis at L5-S1, right shoulder impingement/bursitis, obesity, irritable bowel syndrome, mild tendinosis of the left knee, major depressive disorder, anxiety disorder-NOS, and pain disorder associated with both psychological factors and a general medical condition (20 CFR 404.1520(c) and 416.920(c)).

AR at 146. He concluded that as to Plaintiff's several other alleged physical and mental conditions, the record lacked evidence to show these conditions had more than a transient or non-significant effect on Plaintiff's ability to work. *Id.* At step three, the ALJ found that Plaintiff did not have an impairment that met or medically equaled a "listed" impairment, *i.e.,* an impairment the Commissioner identifies in the regulations as disabling with no need for further analysis. *Id.* at 146-148.

The ALJ then determined that Plaintiff had the following residual functional capacity ("RFC"):

to lift and carry 10 pounds occasionally and less than 10 pounds frequently. She can sit 30 minutes per time for a total of 6 hours in an 8-hour workday with regular breaks. She can stand or walk 15 minutes per time and she can stand or walk, in total, 2 hours in an 8-hour workday, with regular breaks. She can push and pull within her lifting and carrying capacity. She can occasionally operate foot controls bilaterally. The claimant can occasionally climb ramps or stairs, but never ladders, ropes, or scaffolds. She can never balance, stoop, kneel, or crawl, as part of her job duties. She can occasionally twist. The claimant can never reach overhead with her right dominant upper extremity. She can frequently reach in all other directions, or handle, with her right upper extremity. The claimant should never work around open, dangerous machinery, at unprotected heights, or drive a motor vehicle as part of her job duties. The claimant has the ability to understand, remember, and carry out those kinds of work procedures and instructions that can be learned in a period of 30 days, where there is only occasional work interaction with supervisors, co-workers, or the public. The work should be performed in an environment that is essentially unchanging, and which does not involve assembly-line work.

AR at 148. In determining Plaintiff's RFC, the ALJ relied primarily on the opinions of three

physicians, each of which he found consistent with the overall record:

> [T]he undersigned [g i v e s] greatest weight to the opinions of
> treating physician Dr. Mark Hayman, from February 25, 2014, that
> the claimant can perform sedentary work (Exs. 7F, 8F), as is reflected
> in the above residual functional capacity. Dr. Hayman's opinions are
> the most recent, and they are most consistent with the overall record.
> The doctor's apparent approval (the document is unsigned) of a
> parking privileges application because of a severely limited ability to
> walk (Exs. 17E, 14F/7-8) is consistent with sedentary exertion, and
> the doctor's opinions from February 25, 2014 (Exs. 7F, 8F).

*Id.* at 149. The ALJ thus accorded the greatest weight to the opinion of Plaintiff's treating

physician Dr. Hayman as "the most recent, and … most consistent with the overall record." He

also gave "substantial weight" to an earlier opinion of another of Plaintiff's treating physicians,

Dr. Malinda Schlicht.

> The doctor opined the claimant could not do any heavy labor, but
> that she could lift, push, or pull up to 15 pounds. She opined the
> claimant should not sit or stand for more than 30 minutes in a row
> without stretching. She opined the claimant should not frequently
> bend. The doctor opined the claimant could work 8 hours per day,
> and 36 to 40 hours per week. The doctor wrote, "classes are fine"
> as long as the claimant can stretch every 30 minutes (Ex. 10F).

*Id.* at 148. The ALJ further noted that Dr. Schlicht's opinion "is supported by her detailed outline

of the claimant's diagnoses and treatment." *Id.* at 149 (citing Ex. 10F, AR at 1156-58). Finally,

the ALJ gave "some weight" to the DDS physician Dr. Susman, who opined "that the claimant

can perform light exertional work with additional postural and manipulative limitations." *Id.* The

ALJ found all three of Drs. Hayman, Schlicht, and Susman's opinions were "generally consistent

with the overall record." *Id.*

In determining Plaintiff's RFC, the ALJ also reviewed the record for the impact of

Plaintiff's non-severe impairments, including obesity. *Id.* He reviewed the documentary evidence

regarding Plaintiff's chronology, diagnoses, results of evaluations and examinations, treatments,

statements of Plaintiff that her providers noted during those appointments, and her daily activities. AR at 149-152. Among other things, the ALJ pointed to inconsistencies in Plaintiff's reports to health care providers regarding the sources and timing of her pain, including the date of a car accident. *Id.* at 150-51. The ALJ noted records from Plaintiff's physical therapist in which the therapist described her as noncompliant with her home exercise regimen for pain. *Id.* at 151. The ALJ also pointed to several portions of Plaintiff's testimony regarding her daily activities (*e.g.,* caring for her small child and going to community college part-time), symptoms and pain levels. *Id.* Plaintiff reported among other things using medical marijuana and prescription pain medications daily. *Id.* The ALJ considered Plaintiff's treatment by a pain psychologist, John Mark Disorbio, Ed.D., her diagnosis of having a pain and somatic disorder, and of having disorders of a psychological nature. *Id.* at 154.

As to mental conditions that Plaintiff raised after the first hearing,

> Dr. Pelc testified to his opinion, based on his review of the record, that the claimant is mildly limited in her ability to understand, remember and carry out simple instructions; moderately limited in her ability to understand remember and carry out more detailed instructions; mildly to moderately limited in her ability to interact with co-workers, supervisors, and the public; and moderately limited in her ability to respond appropriately to usual work settings, and changes in routine work. The undersigned gives substantial weight to this opinion from Dr. Pelc. His is the only specific assessment of the claimant's mental functioning in the record. It is supported by his testimony, and it is related to his specialty in psychology.

AR at 155. In short, based on the opinion testimony, documentary evidence and Plaintiff's testimony, the ALJ concluded there was insufficient evidence to demonstrate that Plaintiff's impairments rendered her totally incapable of working.

At step four, based on Plaintiff's RFC, the ALJ found that Plaintiff could not perform any past relevant work. *Id.* at 156. At step five, the ALJ found: "[c]onsidering the claimant's age,

education, work experience, and residual functional capacity, there are jobs that exist in

significant numbers in the national economy that the claimant can perform." AR at 156.

Specifically, the ALJ relied on the VE's testimony that Plaintiff could do

> the following unskilled (SVP 2), sedentary occupations, by reference
> to the DOT *[Dictionary of Occupational Titles]* with numbers of
> jobs in the national and regional (State of Colorado) economies:
> (1) Microfilm document preparer, DOT # 249.587-019, 45,000
> (U.S.)/400 (Colo.);
> (2) Address clerk, DOT # 209.587-010, 20,000 (U.S.)/500
> (Colo.);
> (3) Tube clerk, DOT # 239.687-014, 4,000 (U.S.)/200 (Colo.);
> (4) Type copy examiner, DOT # 979.687-026, 8,000 (U.S.)/300
> (Colo.).

AR at 157. The ALJ found that these jobs existed in a significant number and therefore found

that Plaintiff did not meet the definition of "disabled" for purposes of the Social Security Act. *Id.*

at 158. Accordingly, Plaintiff's application was denied.

Plaintiff requested the Appeals Council's review of the ALJ's decision. On February 23,

2016, the Appeals Council denied her request. *Id.* at 1-4.[4] The decision of the ALJ then became

the final decision of the Commissioner. *See, e.g.,* 42 U.S.C. § 1383(c)(3); 20 C.F.R. § 416.1481.

Plaintiff timely filed this action on April 12, 2016. Doc. 1. As the "district court of the United

States for the judicial district in which the plaintiff resides," this court has jurisdiction. 42 U.S.C.

§§ 405(g), 1383(c)(3).

---

[4] The Appeals Council reviewed the record and "also looked at medical records from Kaiser
Permanente, dated September 2, 2014 through April 30, 2015 and the Mental Impairment
Questionnaire from Grant Tschetter, LPC, dated February 7, 2015. The Administrative Law
Judge decided your case through August 25, 2014. This new information is about a later time.
Therefore, it does not affect the decision about whether you were disabled beginning on or
before August 25, 2014." AR at 2. Before this court, Plaintiff does not appear to rely on any of
the records that post-date August 25, 2014.

## STANDARD OF REVIEW

The Commissioner's regulations define a five-step process for determining whether a claimant is disabled:

> 1. The ALJ must first ascertain whether the claimant is engaged in substantial gainful activity. A claimant who is working is not disabled regardless of the medical findings.
>
> 2. The ALJ must then determine whether the claimed impairment is "severe." A "severe impairment" must significantly limit the claimant's physical or mental ability to do basic work activities.
>
> 3. The ALJ must then determine if the impairment meets or equals in severity certain impairments described in Appendix 1 of the regulations.
>
> 4. If the claimant's impairment does not meet or equal a listed impairment, the ALJ must determine whether the claimant can perform his past work despite any limitations.
>
> 5. If the claimant does not have the residual functional capacity to perform her past work, the ALJ must decide whether the claimant can perform any other gainful and substantial work in the economy. This determination is made on the basis of the claimant's age, education, work experience, and residual functional capacity.

*Wilson v. Astrue,* No. 10-cv-00675-REB, 2011 WL 97234, at *2 (D. Colo. Jan. 12, 2011) (citing 20 C.F.R. § 404.1520(b)-(f)); *see also* 20 C.F.R § 416.920;[5] *Williams v. Bowen*, 844 F.2d 748, 750–51 (10th Cir. 1988). After the third step, the ALJ is required to assess the claimant's residual functional capacity. 20 C.F.R. § 416.920(e). The claimant has the burden of proof in steps one through four. The Commissioner bears the burden of proof at step five. *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007).

---

[5] "Part 404 of Title 20 of the Code of Federal Regulations … contain[s] the Commissioner's regulations relating to disability insurance benefits[;] identical, parallel regulations can be found in Part 416 of that same title, relating to supplemental security income benefits." *Wilson,* 2011 WL 97234 at n. 2.

> A person is disabled within the meaning of the Social Security Act only if his physical and/or mental impairments preclude him from performing both his previous work and any other "substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2) [and 42 U.S.C. § 1382c(a)(3)(B)]. "When a claimant has one or more severe impairments the Social Security [Act] requires the [Commissioner] to consider the combined effects of the impairments in making a disability determination." …. However, the mere existence of a severe impairment or combination of impairments does not require a finding that an individual is disabled within the meaning of the Social Security Act. To be disabling, the claimant's condition must be so functionally limiting as to preclude any substantial gainful activity for at least twelve consecutive months.

*Wilson*, 2011 WL 97234, at *1 (quoting *Campbell v. Bowen,* 822 F.2d 1518, 1521 (10th Cir. 1987)).

In reviewing the Commissioner's final decision,

> [o]ur review is limited to determining whether the Commissioner applied the correct legal standards and whether the agency's factual findings are supported by substantial evidence. Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. It is more than a scintilla, but less than a preponderance.

*Lee v. Berryhill,* No. 16-5163, – F. App'x –, 2017 WL 2297392, at *1 (10th Cir. May 25, 2017) (internal quotation marks and citations omitted, citing *inter alia Knight ex rel. P.K. v. Colvin*, 756 F.3d 1171, 1175 (10th Cir. 2014)). *See also* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive"); 42 U.S.C. § 1383(c)(3) (referencing § 405(g) for standard of review).

Accordingly, the court may not reverse an ALJ because the court may have reached a different result based on the record; the question is instead whether there is substantial evidence showing that the ALJ was justified in his decision. *See Ellison v. Sullivan,* 929 F.2d 534, 536 (10th Cir. 1990). "We review only the *sufficiency* of the evidence, not its weight .... Although the

evidence may also have supported contrary findings, we may not displace the agency's choice between two fairly conflicting views." *Lee,* 2017 WL 2297392, at *2. Nevertheless, "[e]vidence is not substantial if it is overwhelmed by other evidence in the record or constitutes mere conclusion." *Musgrave v. Sullivan,* 966 F.2d 1371, 1374 (10th Cir. 1992) (internal citation omitted). In addition, "if the ALJ failed to apply the correct legal test, there is a ground for reversal apart from a lack of substantial evidence." *Thompson v. Sullivan,* 987 F.2d 1482, 1487 (10th Cir. 1993) (internal citation omitted).

## ANALYSIS

Plaintiff pursues four arguments on appeal. She argues that the ALJ erred in finding (1) her reports of pain and disability lack credibility; (2) her pain and somatic disorder does not restrict her RFC; (3) she is able to perform the four sedentary jobs identified in the order, regardless of her inabilities to stoop and to reach overhead with her right arm; and (4) that those jobs exist in significant numbers locally or nationally.

I.     *The ALJ's Credibility Determination.*

Plaintiff argues that the ALJ's credibility determination lacks substantial evidence and constitutes improper "picking and choosing" among evidence. Plaintiff cites cases that prohibit "picking and choosing" among parts of an *uncontradicted* treating physician's opinion. *Haga v. Astrue,* 482 F.3d 1205, 1208 (10th Cir. 2007); *Hamlin v. Barnhart,* 365 F.3d 1208, 1219 (10th Cir. 2004) ("[t]he ALJ may not pick and choose which aspects of an uncontradicted medical opinion to believe, relying on only those parts favorable to a finding of nondisability"). Those cases do not take issue with whether an ALJ reasonably resolved conflicting evidence, and they have no bearing here. The ALJ undisputedly gave great weight to treating physicians' opinions. The court thus reviews this issue not for whether there is evidence that the ALJ chose could have

viewed more favorably to Plaintiff, but for whether the ALJ's decision is supported by substantial evidence.

"The ALJ must evaluate the credibility of the claimant's testimony where that testimony could influence the ultimate finding of disability." *Ploughe v. Colvin,* No. 14-cv-00138-RBJ, 2014 WL 7403234, at *7 (D. Colo. Dec. 29, 2014) (citing 20 C.F.R. § 404.1529(a)).

> Credibility determinations are peculiarly the province of the finder of fact, and we will not upset such determinations when supported by substantial evidence. … However, findings as to credibility should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings.

*Kaighn v. Colvin,* 13 F. Supp. 3d 1161, 1173 (D. Colo. 2014) (internal quotation marks and citations omitted, citing *Diaz v. Sec'y of Health & Human Servs.,* 898 F.2d 774, 777 (10th Cir. 1990); *Huston v. Bowen,* 838 F.2d 1125 (10th Cir. 1988)). "[I]nconsistency between a claimant's testimony about the limiting effect of symptoms and other substantial evidence in the record can be a valid reason to discount the claimant's testimony." *Kaighn,* 13 F. Supp. 3d at 1174 (citing 20 C.F.R. § 404.1529(c)). In particular, the Commissioner looks for whether "there are any conflicts between your [the claimant's] statements and … statements by your medical sources … about how your symptoms affect you." 20 C.F.R. § 404.1529(c)(4).

The ALJ found Plaintiff's reports of pain and disability not credible for several reasons. First and foremost, Plaintiff's reports were not supported by the opinions of her treating physicians, Drs. Hayman and Schlicht, and by the opinion of Dr. Pelc:

> The claimant's reports of pain and limitation, and their effect on her ability to work are not credible. The claimant's alleged limitations are not supported by the medical opinions given substantial weight, including the treating source opinions of Dr. Hayman and Dr. Schlicht, and the medical expert opinion of Dr. Pelc.

AR at 156. Plaintiff does not challenge that her complaints are more severe than what Drs.

Hayman, Schlicht or Pelc's opinions reflect. Doc. 16 (Opening Brief) at 35-39; Doc. 20 (Reply)

at 1-3. Even if there were no other factual support for the ALJ's credibility determination, the

inconsistency between Plaintiff's complaints and the opinions of Drs. Hayman, Schlicht and Pelc

is itself substantial support for finding Plaintiff's complaints are not credible.

The second fact that led the ALJ to conclude that Plaintiff's reports were not credible was

"[t]he claimant's multiple inconsistent reports, as described herein, [as] diminish[ing] the

persuasiveness of her subjective complaints and reported limitations." AR at 156. Plaintiff's

inconsistent reports regarded (a) when she was in the car accident that she later reported as

causing or exacerbating several conditions, and (b) what she believed had caused her conditions.

Plaintiff argues that the discrepancies regarding the date of her car accident are only one or two

errors that could be due to inaccuracy in Dr. Malinda Schlicht's notetaking.  The ALJ found in

relevant part:

> The record shows the claimant to report having a motor vehicle
> accident in June or July 2011. The first evidence of this appears to
> have been an email from the claimant to Kaiser on July 30, 2011 (Ex.
> 2F/103). [AR at 612].
> When she was seen for a physical therapy session a few
> weeks later, on August 23, 2011, the claimant reported the accident
> had occurred on June 27, 2011, and that it had greatly exacerbated her
> symptoms (Ex. 2F/106). Other evidence shows the claimant has
> apparently been inconsistent in reporting the date of the accident,
> alternately reporting that it occurred on June 27, 2011 (Exs. 2F/106,
> lOF/ 1), July 24, 2011 (Exs. 2F/188, 2F/190, 6F/ 15, 12F/2), July 27,
> 2011 (Exs. 2F/188, 2F/190, 6F/15, 12F/2), and six months prior to
> May 2012 (i.e., approximately December 2011) (Ex. 2F/278). The
> claimant has also apparently given different accounts of the accident,
> reporting, on one hand, that she was a passenger in the car (Ex.
> 2F/326), and, on the other hand, that she was the driver of the car (Ex.
> 6F/15).
> The apparent inconsistencies in the claimant's reporting of the
> alleged accident do not enhance the claimant's credibility. The
> undersigned also takes notice that the claimant was seen in Kaiser in
> June and July 2011 but there are no reports of a motor vehicle

> accident on these dates contemporaneous with when she said the accident occurred (See Exs. 2F/96-103). There are no other treatment records in June or July 2011. To the extent the claimant had a motor vehicle accident, there is no showing that it was severe enough to require medical treatment at the time of the accident.

AR at 150.

The court has reviewed each of the documents that the ALJ cited regarding Plaintiff's inconsistent reports of the car accident. Two of the earlier records refer to the accident as occurring June 27, 2011; one refers to July 27, 2011; four refer to July 24, 2011; one record refers to six months prior to May 2012; one record refers to Plaintiff as a passenger; another refers to her as the driver.[6] Dr. Schlicht was not the author of most of these records. While the records could be viewed in a manner more favorable to Plaintiff, they are evidence that a reasonable mind would accept in concluding that Plaintiff's reports of the accident were inconsistent in such a manner as to reflect poorly on Plaintiff's credibility.[7]

The ALJ's finding (AR at 150-51) of variances in Plaintiff's reports regarding the causes or inception of pain in her hip, back and shoulder is also supported by substantial evidence. The

---

[6] On August 4, 2011, Debra Dyer, LPN noted as the "reason for email:" "motor vehicle accident 7/30/2011." AR at 612. It is unclear whether July 30, 2011 is the date of the email or the accident. On August 23, 2011, Michael Wagnor, P.T. noted that Plaintiff "states that she had a MVA on June 27, 2011." AR at 615. In a form dated September 6, 2011, Dr. Schlicht noted "MVA 6/27/2011." AR at 1156. In Dr. Schlicht's letter dated December 1, 2011, she noted July 27, 2011. AR at 1159. Three providers note the accident as July 24, 2011. AR at 697, 699 (December 27 and 28, 2011, Amy Oldenburg, MD); AR at 1139 (January 7, 2013, Bradley D. Vilims, M.D.); AR at 1161 (January 16, 2013, John Mark Disorbio, Ed.D.). On May 16, 2012, Lori Mulvany, NP noted the accident was six months prior (*i.e.,* approximately December 2011). AR at 787. On July 2, 2012, Julie Seibert, M.D. noted that Plaintiff was a passenger in the car accident. AR at 835. On January 7, 2013, Dr. Vilims noted that she was the driver. AR at 1139.

[7] Plaintiff also takes issue with the ALJ's remarking that Plaintiff described the accident to some of her providers as a "car wreck," arguing this is synonymous with a car accident. The most detailed description of the accident relates a mild accident in which a car hit the passenger side of her car and caused it to jump a curb. AR at 1139. Plaintiff does not dispute that was the nature of the accident. Doc. 16 (Opening Brief) at 17 (citing AR at 697). Although these records could be viewed more favorably to Plaintiff, the ALJ was not unreasonable in viewing the provider's reference to a "car wreck" as showing amplification of the facts.

court reviewed the documents that the ALJ cites (AR at 651, 658, 699, 742, 835) in light of the entire record. Although these records could be viewed more favorably to Plaintiff, the ALJ's view that they reflect inconsistencies in Plaintiff's reports is reasonable. In short, the ALJ's finding that Plaintiff has been inconsistent in describing the causes or inception of her various pain symptoms is additional support for his finding Plaintiff's reports not credible.

In his credibility finding, the ALJ next pointed to:

> The claimant's daily activities: raising a child on her own and attending school, where she has a 4.0 grade average, are not consistent with her alleged severity of limitations. The claimant's infrequent mental health treatment does not support her alleged severity of mental impairment.

*Id.* at 156. Plaintiff argues that her care for her son resulted in needing medical treatment, but Plaintiff cites only one medical record. Doc. 16 (Opening Brief) at 38 (citing AR 1029). In that instance, Plaintiff reported that she had "right arm and wrist pain for one day after carrying her large 2 year old around the aquarium. Took some salsalate for it and it is a lot better." AR at 1029 (Ex. 5F/20). She was apparently prescribed a thumb Velcro splint. *Id.* This single instance of pain from a non-daily activity does not cause the ALJ's finding to be unsupported.

Plaintiff also argues that her father helped her daily with childcare or domestic tasks, a fact that the ALJ recognizes in his decision. Although "sporadic performance of household tasks or work does not establish that a person is capable of engaging in substantial gainful activity," *Kaighn,* 13 F. Supp. 3d at 1174, Plaintiff's responsibilities in caring for her son were not sporadic. Plaintiff does not dispute that as a single mother, she has been the primary caregiver for her special needs son throughout the time period that she alleges disability. Plaintiff's care for her small child is to her credit, but in the context of a disability application, her ability to care for her child

supports the ALJ's finding that Plaintiff has more ability for substantial gainful employment than what Plaintiff asserted.[8]

As to Plaintiff's assertion of mental health impairments being unsupported by infrequency of mental health treatment, Plaintiff argues that the ALJ should not have "glossed over the results of the BBHI-2 psychiatric testing conducted by Dr. Vilims, which … showed high, and extremely high somatic pain complaints and functional complaints." Doc. 20 (Reply) at 5. The BHI-2 ("Battery for Health Improvement-2") evaluation was actually conducted by John Mark Disorbio, Ed.D. AR at 1160-79 (Ex. 12F, "Comprehensive Psychological Report" dated January 22, 2013, evaluation date January 16, 2013).  The ALJ devoted several paragraphs in his decision to the Disorbio report and why the ALJ did not give weight to its low GAF assessment of Plaintiff. AR at 154-55.

> A week after the first hearing, the claimant's attorney submitted into the record evidence of treatment by psychologist Dr. John Mark Disorbio (Ex. 12F) from January to June 2013 – treatment that had not been mentioned by the claimant or her attorney at the hearing. The records from this doctor show that the claimant was diagnosed with a pain disorder, major clinical depression, anxiety-NOS, post-traumatic stress disorder features, somatization features, and histrionic personality disorder features (Ex. 12F/8).  The undersigned notes that the diagnosis of a pain disorder appears to be supported by diagnostic testing consisting of the Battery for Health Improvement-2 ("BHI-2") (Ex. 12F), and this has reasonably resulted in the physical limitations given by the claimant's treating physicians (Dr. Hayman and Dr. Schlicht) that otherwise do not appear to be well supported by objective medical findings.

---

[8] The ALJ also noted other inconsistencies between Plaintiff's reports and other evidence of her daily activities.  The ALJ noted that Plaintiff had at times walked 2-3 miles per day during the time period that she alleged disability from pain or numbness. AR at 152. Although in Plaintiff's brief she assumes that the long walks are the "monster walks" prescribed by the physical therapist, there is no support for this. Plaintiff testified that the physical therapist "yelled at her" for taking the long walks (AR at 230) whereas the therapist mentions "monster walks" as one of the "therapeutic exercises" that he prescribed. AR at 640, 643. The ALJ did not draw any unsupported inferences from these facts.

AR at 154. The ALJ explained that "[i]t appears Dr. Disorbio did not conduct a formal mental status examination and his report indicates he did not review any other medical records- although he evidently talked to Dr. Vilims about the claimant's treatment (Ex. 12F)." The ALJ also noted that shortly after the Plaintiff's car accident that Dr. Disorbio's report describes as a "significant automobile accident," Plaintiff started attending community college and her treating physician Dr. Schlicht opined that she could work or go to school fulltime. AR at 155. Again, the most detailed record describes a relatively mild accident in which a car hit the passenger side of Plaintiff's car and caused it to jump a curb. AR at 1139. Although the Disorbio report could be viewed more favorably to Plaintiff's disability application, substantial evidence supports the ALJ's finding that Dr. Disorbio relied on Plaintiff's reports of pain and disability that were not credible.

Moreover, although Plaintiff focuses on her very high complaints of pain and somatic symptoms during Dr. Disorbio's evaluation, Dr. Disorbio explains that the

> BHI-2 is a psychomedical test that was designed, developed and normed on the physically injured and chronic pain populations. … Bethany's scale scores will be compared to the average patient in physical rehabilitation and/or with chronic pain. * * * Bethany apparently does not feel that she is able to cope very effectively and her defenses have eroded. Therefore, many of her scale scores may have a lowering of her defenses which tends to be associated with a heightened report of negative information. *Patients with this validity profile are portraying their lives as terrible. She reports her life as being negative to an extent that was seen in only the most extreme 8% of patients who were asked to fake bad. … Her scale scores may be somewhat of an exaggeration* perhaps for a cry for help and for medical providers to take her seriously.

AR at 1162-63 (emphasis added). The report itself thus provides substantial support for the ALJ's finding that Dr. Disorbio "relied at least in part on the claimant's subjective reports as to her limitations, and the claimant's reports are not credible."

Plaintiff also points to the ALJ's finding that her "temporary work as a tax preparer undercut her allegations that she could not work for an entire day." Doc. 16 (Opening Brief) at 38. Plaintiff argues that her abortive work effort cannot be considered as evidence of nondisability or lack of credibility in her complaints, citing *Hierstein v. Chater,* No. 96-6233, 110 F.3d 73 (Table), 1997 WL 158177, at *3 (10th Cir. 1997)). *Hierstein* held that

> reliance on ineffectual job searches and abortive work attempts as evidence of *non* disability-suggested here by the ALJ's comment that even plaintiff's unsuccessful employment efforts "reflect negatively upon the claimant's general credibility," App. II at 68-is contrary to controlling law.

*Hierstein,* 1997 Wl 158177, at *3. In *Hierstein* and the cases cited therein, the evidence regarding the claimant's brief work showed that they were unable to perform the job. *Id.* at *3 ("problems encountered by plaintiff in these attempts, particularly stress-related difficulties and personal conflict with supervisors, appear to reflect the real-world impact of his recognized psychological impairments"); *Miller v. Chater*, 99 F.3d 972, 977–78 (10th Cir. 1996) ("discharged from his employment for 'poor performance'"); *Washington v. Shalala*, 37 F.3d 1437, 1441 (10th Cir. 1994).

Here, there is no evidence that Plaintiff was terminated from the tax preparation job due to poor performance, and the ALJ did not rely on Plaintiff's three months of tax preparation work as a basis for finding general non-credibility. The ALJ found Plaintiff's work as a tax preparer undercut only specific assertions that the job necessarily contradicted:

> The undersigned takes notice that the claimant started working as a tax preparer shortly thereafter (Ex. 6E/l), a sedentary job that certainly required some attention to detail (See Ex. 6E/10). The undersigned finds no evidence that the claimant was unable to perform the demands of the job. *The claimant testified that the work ended because her employer would not comply with her doctor's orders* that she not lift anything, work too long, or walk too long. She said they would not allow her to do exercises (apparently referring to those prescribed by her physical therapist) while she was at work.

> The claimant's testimony in this regard is unconvincing. The undersigned finds no evidence of the work restrictions alleged by the claimant in her testimony, and there is no reason to believe the claimant could not do her exercises at home or on work breaks. Indeed, her treatment records frequently describe her prescribed regimen as an "HEP" (home exercise program) (Ex. 2F/211).
>
> * * *
>
> The claimant's asserted inability to sit at length or complete a workday is not supported by evidence that she had recently worked as a tax preparer for more than two months. * * * [T]he claimant's use of pain medication apparently did not preclude her from performing the work of tax preparer, where she would obviously need to concentrate throughout the day.

AR at 151-52. In short, the ALJ did not err in determining that Plaintiff's reports of pain and disability were not credible in light of the whole record.

## II.     The Effect of Plaintiff's Pain and Somatic Disorder on her RFC

Plaintiff argues that the ALJ inadequately considered her pain and somatic disorder in determining her RFC because he did not expressly analyze three factors that the Tenth Circuit requires.

> We must consider (1) whether Claimant established a pain-producing impairment by objective medical evidence; (2) if so, whether there is a "loose nexus" between the proven impairment and the Claimant's subjective allegations of pain; and (3) if so, whether, considering all the evidence, both objective and subjective, Claimant's pain is in fact disabling.

*Thompson v. Sullivan,* 987 F.2d 1482 (10th Cir. 1993) (citing *Luna v. Bowen,* 834 F.2d 161 (10th Cir. 1987)). Although the ALJ did not use the Tenth Circuit's phraseology, the ALJ analyzed each of these factors. The ALJ found that Plaintiff has a severe impairment in a "pain disorder associated with both psychological factors and a general medical condition." AR at 146.

> The undersigned notes that the diagnosis of a pain disorder appears to be supported by diagnostic testing consisting of the Battery for Health Improvement-2 ("BHI-2") (Ex. 12F), and this has reasonably resulted in the physical limitations given by the claimant's treating physicians (Dr. Hayman and Dr. Schlicht) that

> otherwise do not appear to be well supported by objective medical findings.

AR at 154. The foregoing essentially finds the first two *Luna* factors in Plaintiff's favor: the pain disorder is a pain-producing impairment shown by the objective medical evidence, and there is a nexus between that impairment and Plaintiff's allegations of pain.

The third *Luna* factor is whether the record as a whole – including both the objective and subjective evidence – supports that the Plaintiff's pain was disabling. The ALJ explained in detail why he found Plaintiff's subjective evidence was not credible in light of her treating physicians' opinions and objective evidence. *See supra.* The ALJ further explained in detail why he did not give weight to the pain psychologist's assessment of Plaintiff's GAF:

> Dr. Disorbio measured the claimant's global assessment of functioning ("GAF") at 50, which is indicative of serious limitations of function (Ex. 12F/9). The undersigned does not give significant weight to this assessment. The doctor did not opine to any specific limitations and his GAF score was based on the doctor's initial evaluation of the claimant- that is, without any longitudinal perspective on her condition. The GAF score from this doctor indicates limitations that are not consistent with the overall record, including the absence of any on-going mental health treatment or use of medication, the claimant's work tax preparer, her attendance and apparent success at college, and the fact she is raising a young child on her own.
>
> Dr. Disorbio's records extend to June 17, 2013, when he noted a plan to see the claimant in two weeks (Ex. 12F/20). However, there is no further evidence of treatment from this medical source and the claimant testified at the second hearing that she has not seen this doctor since June 2013. When the claimant was treated at Kaiser on August 12, 2013, a review of systems noted the claimant to report she was feeling well (Ex. 5F/74).

AR at 154.

Plaintiff argues that

> [e]ven if her pain is purely subjective, Ms. Milam has satisfied the requirements to establish that it produces significant functional limitations by making multiple attempts to obtain relief, being prescribed various medications, including Percocet, by her medical

> providers, and showing that her activities have been curtailed because of pain. In addition, in contrast to most other patients, Ms. Milam had an objective test, the BHI-2, that discussed with specificity the psychological and physically disabling results of her pain condition.

Doc. 16 (Opening Brief) at 40. However, the ALJ properly analyzed all of the relevant factors for weighing Plaintiff's subjective complaints of disabling pain, including the factors that Plaintiff cites from *Luna,* Social Security Ruling (SSR) 96-7p and *Hargis v. Sullivan,* 945 F.2d 1482, 1489 (10th Cir. 1991). *See also* 20 C.F.R. § 404.1529(c)(3), (c)(4). The disconnect between Plaintiff's complaints and the opinions of her treating physicians (and Dr. Pelc), and the additional inconsistencies that led the ALJ to find Plaintiff's complaints not credible, are substantial support for the conclusion that Plaintiff's pain disorder is not disabling. *See, e.g., Franklin v. Astrue,* 450 F. App'x 782, 789-790 (10th Cir. 2011).[9] Plaintiff does not show the ALJ erred regarding her pain and somatic disorder or regarding her RFC.

III.     *The Effect of Plaintiff's Inabilities to Stoop and to Reach Overhead with Her Right Arm.*

Plaintiff argues that because the ALJ found her RFC precludes any stooping and any overhead reaching with her right arm, it was erroneous to rely on the VE's testimony that Plaintiff could perform several jobs. Plaintiff argues that her complete preclusion from stooping prevents her from performing any unskilled sedentary jobs, relying on SSR 96-9p. That guidance document states that "[a] *complete* inability to stoop would significantly erode the unskilled sedentary occupational base and a finding that the individual is disabled would *usually* apply ...."

"Policy Interpretation Ruling Titles II and XVI: Determining Capability to Do Other Work--

---

[9] Plaintiff further argues that the ALJ "essentially ignored [her] pain in assigning the physical restrictions in the RFC" (Doc. 16, Opening Brief, at 41), because Drs. Hayman and Schlicht did not mention Plaintiff's pain disorder, and the ALJ did not give weight to Dr. Disorbio's report on Plaintiff's pain psychology. This argument fails. The ALJ found that the pain disorder diagnosis explains "the physical limitations given by the claimant's treating physicians (Dr. Hayman and Dr. Schlicht) that otherwise do not appear to be well supported by objective medical findings." AR at 154.

Implications of a Residual Functional Capacity for Less Than a Full Range of Sedentary Work," SSR 96-9p, 1996 WL 374185, at *8 (SSA July 2, 1996) (second emphasis added). As the ALJ correctly pointed out, the guidance document does not find disability in all cases of an inability to stoop. The ruling instead directs that "[c]onsultation with a vocational resource may be particularly useful for cases where the individual is limited to less than occasional stooping." *Id*.

> The vocational expert was specifically asked at the hearing by the claimant's attorney about the occupation of microfilm document preparer, and whether that occupation required the ability to stoop. She indicated it did not- testifying that documents are usually delivered at waist level to a person performing this occupation. The vocational expert further stated: "Generally, sedentary jobs would not require stooping". The undersigned gives greater weight to the vocational expert's testimony on this matter than to the general guideline in the Social Security Ruling.

AR at 157. As the Defendant points out, the VE identified four unskilled sedentary jobs that according to the DOT do not require stooping. *DOT* Nos. 249.587-018, 1991 WL 672349 (document preparer, microfilming: stooping is "not present – activity or condition does not exist"), 209.587-010, 1991 WL 671797 (addresser: stooping is "not present – activity or condition does not exist"); 239.687-014, 1991 WL 672235 (tube operator: stooping is "not present – activity or condition does not exist"), 979.687-026, 1991 WL 688696 (type copy examiner: stooping is "not present – activity or condition does not exist"). Plaintiff does not cite any authority that an inability to stoop is always disabling. The court finds no error in the ALJ's reliance on the VE's testimony that Plaintiff's inability to stoop does not preclude her from these jobs.

As to Plaintiff's preclusion from overhead reaching with her right arm, the ALJ included this limitation in the hypothetical question for the VE's testimony. AR at 198-99, 243. The VE answered the hypothetical by identifying the four jobs noted above, as jobs that a person with those limitations could perform. Plaintiff argues that the *Selected Characteristics of Occupations*

shows that each of those jobs "requires frequent reaching, but does not specify whether that reaching is overhead." Doc. 16 (Opening Brief) at 44 (citing SCOS, 1993, pp. 203, 347).[10] The VE testified that she was "familiar with all of these jobs." AR at 245. Plaintiff's attorney questioned the VE and did not ask the VE regarding whether any of these jobs specifically requires overhead reaching. *Id.* at 248-254. The VE also testified for instance that a document preparer's work is generally only at the waist level because someone else collects and brings the documents to the document preparer. *Id.* at 253. Plaintiff cites no authority that has found a conflict between the SCOS's description of generic reaching and an inability to perform one specific type of reaching. The court finds no error in the ALJ's reliance on the VE's testimony that Plaintiff could perform these jobs regardless of her inability to stoop and to reach overhead with her right arm.

IV.    *Jobs Existing in Significant Numbers.*

Plaintiff also argues error because the ALJ did not ask the VE for testimony regarding whether the quantities of these four jobs were significant. The Commissioner bears the burden of proof on this issue. The Commissioner must prove

> substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work. For purposes of the preceding sentence (with respect to any individual), "work which exists in the national economy" means work which exists in significant numbers either in the region where such individual lives or in several regions of the country.

42 U.S.C. § 1382c(a)(3)(B). Thus the Commissioner's regulations provide:

---

[10] The version of SCOS available in Westlaw does not appear to have a § 347. The court reviewed SCOS § 203, and none of the jobs collected therein match the DOT codes for the jobs in the ALJ's order. Some jobs in § 203, such as "typist," require occasional "reaching." DICOT 203.582-066 (G.P.O.), 1991 WL 671703. Others, such as "clerk-typist," require frequent reaching. DICOT 203.362-010 (G.P.O.), 1991 WL 671685.

> If we find that your residual functional capacity does not enable you to do any of your past relevant work … we will use the same residual functional capacity assessment when we decide if you can adjust to any other work. We will look at your ability to adjust to other work by considering your residual functional capacity and the vocational factors of age, education, and work experience, as appropriate in your case. …. Any other work (jobs) that you can adjust to must exist in significant numbers in the national economy (either in the region where you live or in several regions in the country).

20 C.F.R. § 416.960(c)(1).

"Th[e Tenth] Circuit has never drawn a bright line establishing the number of jobs necessary to constitute a 'significant number' and rejects the opportunity to do so here. Our reluctance stems from our belief that each case should be evaluated on its individual merits."

*Trimiar v. Sullivan*, 966 F.2d 1326, 1330 (10th Cir. 1992).

> A judge should consider many criteria in determining whether work exists in significant numbers, some of which might include: the level of claimant's disability; the reliability of the vocational expert's testimony; the distance claimant is capable of travelling to engage in the assigned work; the isolated nature of the jobs; the types and availability of such work, and so on.

*Id.* (quoting *Jenkins v. Bowen,* 861 F.2d 1083, 1087 (8th Cir. 1988)). "The decision should ultimately be left to the [ALJ's] common sense in weighing the statutory language as applied to a particular claimant's factual situation." *Trimiar*, 966 F.2d at 1330 (note omitted).

In this case, the ALJ found that Plaintiff can perform four jobs that total 77,000 jobs nationally and 1,400 jobs in the state, and that this constitutes significant numbers in the national economy. The ALJ cited "the framework of medical-vocational rule 201.28, in conjunction with the vocational expert's reliable testimony," and SSR 83-14. AR at 157-58. Plaintiff argues that the ALJ did not make any findings or ask the VE for testimony to support the numerical significance, but Plaintiff does not address the rule or the guidance document that the ALJ cites.

In any case, this court has considered very similar quantities to be a significant number of jobs within the meaning of step 5 analysis. *See, e.g., Knudson v. Astrue*, No. 10-cv-02905-PAB, 2012 WL 1079130, at *10 (D. Colo. Mar. 30, 2012) (79,900 positions nationally and 1,194 positions locally). Plaintiff's contentions on this issue are more a disagreement with the Commissioner's continued reliance on the DOT despite its occupational titles being "obscure, antiquated, and difficult for a person requiring unskilled work to even determine what they consist of." Doc. 16 (Opening Brief) at 45. The court does not disagree that "common sense [should] dictate[] that when such descriptions appear obsolete, a more recent source of information should be consulted." *Cunningham v. Astrue*, 360 F. App'x 606, 615 (6th Cir. 2010). However, the DOT is among five sources of "reliable job information" noted in the Commissioner's regulations. 20 C.F.R. § 416.966(d)(1). That regulation is entitled to deference under *Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837 (1984). *See, e.g., Astrue v. Capato ex rel. B.N.C.,* 566 U.S. 541, 132 S. Ct. 2021, 2034 (2012). Plaintiff's concern is better addressed to the Commissioner in a request to amend the regulation. The court finds no error in the ALJ's determination that Plaintiff is capable of performing jobs that exist in significant numbers in the national or local economies.

CONCLUSION

For each of the reasons stated above, the decision of the Commissioner is AFFIRMED. The clerk of court shall enter final judgment.

DATED at Denver, Colorado, this 6th day of June, 2017.

BY THE COURT:


*s/Craig B. Shaffer*
United States Magistrate Judge